IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| LINDA R ESTEP, | ) CASE NO.3:19-CV-02613 |
| | ) |
| | ) JUDGE JAMES G.CARR |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) REPORT AND RECOMMENDATION |
| | ) |
| Defendant. | |

**Introduction**

Before me by referral[1] is an action by Linda R. Estep[2] under 42 U.S.C. § 405 seeking

judicial review of the 2018 decision of the Commissioner of Social Security that denied

Estep's 2016 application for supplemental security income and disability benefits.[3] The

Commissioner has answered[4] and filed the transcript of the administrative proceedings.[5]

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge
James G. Carr in a non-document order entered November 8, 2019.
[2] ECF No. 1.
[3] ECF No. 14 (transcript) at 15.
[4] ECF No. 8.
[5] ECF Nos. 14 (transcript), 15 (amended transcript).

Pursuant to my initial[6] and procedural[7] orders, the parties have filed their briefs[8] and

supporting charts,[9] and have met and conferred with the goal of reducing or clarifying the

issues.[10] The parties have participated in a telephonic oral argument.[11]

Based on this record and in conformity with the applicable law, I will recommend

that the decision of the Commissioner be reversed and remanded as is more fully set forth

below.

## Facts

Estep, who was born in 1968,[12] is a high school graduate who formerly worked as a

quality control manager, shipping supervisor, inspector and customer service

representative.[13] The ALJ found that she had the following severe impairments:

> "Degenerative disc disease of the lumbosacral and lumbar spine;
> degenerative joint disease right shoulder joint; rotator cuff syndrome with tear of
> the right shoulder; adhesive capsulitis right shoulder; status post right shoulder
> arthroscopy and repair; status post left elbow cubital tunnel release and left hand
> open carpel tunnel release; chondromalacia left knee; fibromyalgia; asthma;
> depression; anxiety; and social anxiety disorder."[14]

---

[6] ECF No. 5.

[7] ECF No. 10.

[8] ECF Nos. 11 (Estep brief), 16 (Commissioner brief), 18 (Estep reply).

[9] ECF Nos. 11, Attachment (Estep chart), 16, Attachment (Commissioner chart).

[10] ECF No. 19.

[11] ECF No. 22.

[12] Tr. at 25.

[13] *Id*.

[14] *Id*. at 17-18.

The ALJ then determined that Estep had the residual functional capacity (RFC) to perform light work, subject to the following exceptions:

> "She can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, and can occasionally balance, stoop, kneel, crouch, but never crawl. She can never reach overhead with the bilateral upper extremities. She is to do no pushing or pulling with the dominant right upper extremity. She can frequently handle, finger, and feel with the bilateral upper extremities. She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. She can occasionally operate a motor vehicle. She can never work in conditions of humidity and wetness, in conditions of extreme heat or cold, or in conditions where vibrations are present. She is also limited to performing simple, routine, and repetitive tasks, but not at a production rate pace, for example, no assembly line work. She is limited to occasional contact with supervisors, coworkers and the general public. She is limited to a sit/stand option at the workstation each hour to change positions for two minutes while remaining on task 90% of the time."[15]

From this, a VE testified that Estep would be able to perform the jobs of a sorter packer, inspector, and general office help.[16]

Accordingly, Estep was found to be not disabled and her applications for benefits were denied.[17]

## Analysis

Estep here raises the following three challenges to the Commissioner's decision:

• The RFC is not based on substantial evidence in that the ALJ violated the treating physician rule articulated in *Gayheart*[18] by giving only little weight to the functional opinion of Dr. Siddiqui, Estep's treating physician, and that of a certified nurse practitioner.[19]

---

[15] *Id*. at 19-20.

[16] *Id*. at 26.

[17] *Id*. at 26-27.

[18] *Gayheart v. Commissioner*, 710 F.3d 365 (6th Cir. 2013).

[19] ECF No. 11 at 14-20.

- The ALJ erred in assessing Estep's credibility.[20]

- 3.    The ALJ erred at Step Five.[21]

## A. Dr. Siddiqui's opinion and *Gayheart*

Dr. Sana Siddiqui gave an opinion in 2018 that stated, in relevant part, that Estep could only occasionally perform gross and fine manipulation and would require sit/stand/lying option at will.[22] The ALJ gave this opinion little weight, reasoning that it is inconsistent with the objective medical evidence and with Dr. Siddiqui's own treatment notes, which the ALJ characterized as only finding musculoskeletal "neck and back pain, and neurological [*sic*] as negative for weakness and numbness."[23]

Estep here argues first that what was cited by the ALJ as Dr. Siddiqui's treatment notes incorrectly characterizes a multi-page treatment note prepared by another physician. That note, Estep points out, recorded that she was seen for right shoulder pain that was radiating to her elbow, hand and fingers, which were going numb.[24] She notes that this specific finding of numbness is inconsistent with a later statement in this note that her examination found no weakness or numbness.[25]

---

[20] *Id*. at 20-22.
[21] *Id*. at 23-24.
[22] Tr. at 22.
[23] *Id.*
[24] *Id*. at 627-30.
[25] ECF No. 11 at 15.

Moreover, Estep also highlights that the other documents cited by the ALJ as non-supportive of Dr. Siddiqui's opinion are not relevant. Specifically, she points to:

- a handwritten worksheet "likely completed by a technician during a doppler test" that allegedly has no bearing on her ability to finger and was not generated by Dr. Siddiqui.[26]

- records from other family practice physicians that predate Estep's treatment for shoulder, cubital and carpal tunnel problems and thus, purportedly, are not relevant to her abilities to handle and finger after the manifestations of these issues.[27]

- exhibits describing treatments for left cubital and carpal tunnel syndrome releases.[28]

- an exhibit with information as to another doctor's treatment of Estep's right shoulder, left knee and left wrist, and her need for surgery. As Estep notes, these records do not deal with her ability to handle and finger, how often she would be absent from work, how long she could walk or stand, or how much she can lift.[29]

- records from Dr. Elgafy, a spinal surgeon, that record also allegedly do not directly bear on Estep's ability to handle or finger.[30]

The Commissioner, for his part, begins by noting that although Dr. Siddiqui's opinion received little weight, the ALJ gave great weight to the opinions of the two state reviewing physicians, who found, as did the RFC, that Estep's knee, shoulder and lower back issues required more accommodation is the RFC than did her purported issues with handling and fingering.[31] Further, the Commissioner observes that Dr. Siddiqui gave her

---

[26] *Id.* at 16.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 17.

[31] ECF No. 16 at 6.

opinions in a check-box form, which of itself gave no reasons for the opinions nor cited any supporting evidence.[32]

Further, the Commissioner himself cites to Estep's treatment record as a whole, which the Commissioner argues show only mild findings and conservative treatment.[33]

Moreover, the Commissioner maintains that the treatment records cited by the ALJ, and criticized by Estep, contain other information supportive of the ALJ's decision. For example, Estep's examination notes show she presented with minimal complaints, had generally normal exam findings (or at worst "mild abnormal" findings) and no significant functional difficulties.[34] Further, notes from the treatment of Estep's left arm show successful cubital tunnel and carpal tunnel releases, with no further treatment.[35] Likewise, the notes from Estep's orthopedist were not irrelevant since they showed she had full strength in all her extremities, including her fingers.[36] Finally, the Commissioner observes that the record shows only a single instance of where Dr. Siddiqui notes anything related to musculoskeletal issues, when she identified limited range of motion and tenderness in Estep's shoulder.[37]

---

[32] *Id*. at 7.
[33] *Id*. at 8.
[34] *Id*. at 10.
[35] *Id.*
[36] *Id*.
[37] *Id*. at 11.

As an initial matter, the ALJ never directly identified Dr. Siddiqui as a treating source and that Estep never raised that issue.

The record shows that Dr. Siddiqui treated Estep from January 2017 through March 2018 and treated her for colds, diabetes management, edema and an infection.[38] She is undoubtedly a treating source.

More troubling is that the ALJ never acknowledged or identified Dr. Siddiqui as a treating source. Far from a mere formality, as Magistrate Judge Greenberg recently stated the failure of the ALJ to acknowledge a physician as a treating source is a "clear" and "glaring" error of law that the reviewing court may raise *sua sponte*.[39]

That said, the failure to acknowledge Dr. Siddiqui as a treating source was merely predicate to the ALJ then failing to apply the two-step *Gayheart* analysis: (1)  determine, by reference to medically acceptable clinical and laboratory techniques if the opinion is entitled to its presumption of controlling weight; (2) if not, then, by application of the factors given in 20 C.F.R. § 404.1527(d)(2), determine and explain the lesser weight to be given.[40]

Here, the ALJ did not begin the analysis of Dr. Siddiqui's opinion with a presumption of controlling weight to the opinion. In fact, as noted, there was not even an acknowledgement that she was a treating source. From there the ALJ should then have

[38] Tr. at 49, 642-45, 657-58.
[39] *Clark v. Commissioner*, 2021 WL 377705, at *16 (N.D. Ohio Feb. 3, 2021) (citations omitted).
[40] *McCall v. Comm'r*, 2017 WL 4271809, at * 4 (N.D. Ohio Sept. 26, 2017).

considered her opinion in light of the many factors of the treating source regulation, such as the length, nature, extent and frequency of the treatment relationship and the medical specialty of the doctor.[41] In this case, she made no attempt at this second step of *Gayheart* analysis.

In *Gayheart* itself, as here, the ALJ made no separate finding as to controlling weight, as required in the first step of the analysis, and then, as here, impermissibly collapsed the two-step analysis into a single step and assigned the treating source opinion little weight, explaining that finding by the "secondary criteria" of the regulations, such as "internal inconsistencies between the [treating source] opinion[] and the treatment reports."[42]

The failure of an ALJ to follow these procedural rules will result in a finding that the decision was not supported by substantial evidence even if that decision might otherwise be justified based on the record.[43] The Commissioner's *post hoc* arguments on judicial review are irrelevant.[44]

In sum, while it is true that an ALJ need not explicitly discuss or analyze every detail of the treating physician relationship on the record,[45] it is also true that without clear

---

[41] *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004).

[42] *McCall*, 2017 WL 4271809, at * 4.

[43] *Id.*

[44] *Id.*

[45] *Id.* at **5-6. As long as the ALJ "adequately addresses" the *Gayheart* factors and supplies sufficient reasons for the weight ultimately assigned, the Commissioner's decision will not be reversed for "failure to strictly follow the *Gayheart t*emplate."

evidence that the ALJ considered Dr. Siddiqui's opinion under the treating physician rule and then assigned the weight given based on the other *Gayheart* factors,  the ALJ's decision cannot be said to comply with the regulations.[46]

## B.    Nurse Practitioner Opinion

Estep also contends that the ALJ erred in giving only some weight to the opinion of a mental health nurse practitioner that Estep would likely miss work one or two days per month.[47] As the Commissioner notes, nurse practitioners are not acceptable medical sources.[48] As such, the ALJ was under no obligation to accord any special weight or deference to this opinion and had the discretion to assign it any weight he felt appropriate.[49]

Here, the ALJ gave the opinion some weight, noting that CNP Cooper's opinion as to Estep's absences from work was not based on any specific limitation and was inconsistent with evidence that Estep has had no evidence of mental health treatment during the time she was in individual counseling, during which time she has had no referrals for more intensive treatment.[50]

---

[46] *Harmon v. Astrue*, 2011 WL 834138, at *8 (N.D. Ohio Feb. 8, 2011); *Barcelona v. Astrue*, 2008 WL 3213006, at * 5 (S.D. Ohio Feb. 1, 2008).

[47] ECF No. 11 at 19.

[48] ECF No. 16 at 18.

[49] *Noto v. Comm'r*, 632 F. App'x 243, 248-49 (6th Cir. 2015); *Hennon v. Comm'r*, 2020 WL 820770, at *11 (N.D. Ohio Feb. 19, 2020)(the ALJ not required to give good reasons for assignment of weight to non-treating source opinions but only to explain the weight assigned).

[50] Tr. at 22.

Similarly, the ALJ gave some weight to the opinion of Dr. Shamberg, a psychological examining consultant, who found that Estep was deeply depressed in a way that would impact job performance.[51] The ALJ stated that she accommodated these restrictions in the RFC that limited Estep to simple, routine and repetitive tasks and limited her contact with others.[52]

Thus, consistent with the requirement that an ALJ only needs to explain the weight given to opinions of non-treating sources, I recommend finding no error in the weight given to these opinions.

## C.    Credibility and Step Five

The remaining two issues – credibility of the claimant and the Step Five finding - are now addressed.

A reviewing court will not disturb an ALJ's credibility finding without a compelling reason.[53]

Here, while Estep contends that even if the ALJ's finding as to her daily activities is supported, "these activities do not support an adverse credibility finding."[54] The Commissioner, for his part, notes that the ALJ did not ignore Estep's subjective complaints but rather took into account that her daily activities "demonstrated that she had better

---

[51] *Id*. at 23.
[52] *Id*. at 24.
[53] *Hernandez v. Comm'r*, 644 F. App'x 468, 476 (6th Cir. 2016).
[54] ECF No. 11 at 22.

functioning than she claimed."[55] Further, the Commissioner observes that the RFC incorporates many of Estep's complaints that "were consistent with the broader record."[56] Moreover, the Commissioner points out that the ALJ did not use her daily activities as a basis for concluding that she could work, but only to show that she had greater levels of functioning than she claimed.[57]

It is well-settled that an ALJ's finding as to a claimant's subjective complaints is entitled to great deference.[58] As the Commissioner observes, the ALJ acknowledged that using the stairs caused pain, thus limiting that in the RFC, and that Estep needed periodic breaks while driving, which was also recognized in the RFC.[59]Similarly, the ALJ also recognized Estep's own testimony about limitations on shoulder mobility and tingling in her hands by also incorporating limitations in those areas into the RFC.[60]Further, the RFC reflects that her daily activities showed she could do more than she claimed.[61]

Although Estep maintains that these examples are taken out of context or improperly used to prove she "can work,"[62]I recommend finding, as did the Commissioner, that the examples cited were properly used for the limited purpose of highlighting that Estep has

---

[55] ECF No. 16 at 15.

[56] *Id*. at 16.

[57] *Id.*

[58] *Hernandez v. Comm'r*, 644 Fed. Appx. 468, 476 (6th Cir. 2016).

[59] ECF No. 16 at 14-15 (citing transcript).

[60] *Id*. at 15 (citing transcript).

[61] *Id.* at 15-16 (citing transcript).

[62] ECF No. 18 at 8-9.

greater function than she claims and were carefully calibrated by the ALJ to match the evidence and then were so incorporated into the RFC.

## Conclusion

For the reasons stated, I recommend that the decision of the Commissioner be reversed and remanded for further proceedings as is more fully set forth above.

IT IS SO RECOMMENDED.

Dated: March 24, 2021                              s/William H. Baughman Jr.
                                                   United States Magistrate Judge

## **Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of

Courts within fourteen (14) days of receipt of this notice. Failure to file objections within

the specified time waives the right to appeal the District Court's order.[63]

---

[63] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).